We have three cases on for argument today and one will be submitted on the briefs. The first case is number 2008-1446 In Re Siemens Water Technology and Mr. Gore. You may begin when you're ready. Good morning. I'd like to begin by discussing the shared and unshared slump claims. These are claims that were attacked by the PTO with an attempt to modify the triplet system in view of a reference called FOIDL in order to achieve the claimed arrangement of a first chamber with an individual slump followed by two chambers that share a slump. We believe there are at least two fatal problems with this argument. The first is that FOIDL does not teach an arrangement in which there is a first chamber with an individual slump and two following chambers with the shared slump. The only arguments that are actually described in FOIDL are five chambers with one slump. There is a throwaway catch-all sentence at the very end of the specification right before the claims where those usually appear that states vaguely that another possibility would be to divide the space into a plurality of compartments so that the gases could be treated sequentially with different washing liquids each serving the purpose of dissolving another gaseous pollutant. Why do you characterize that as a throwaway sentence? It's part of the teaching of that reference, is it not? It is part of the teaching of that reference, but there is no disclosure there to explain to a person who is going there how that would be achieved. And actually... Well, I mean, what more disclosure is necessary? Or even if it doesn't disclose anything else, it nonetheless discloses the notion that that vessel could be subdivided. It discloses that notion in that context, but what is happening here is that the PTO is expanding the context of FOIDL, which is fundamentally a system that is operating mechanically to dissolve pollutants from the air stream. But it's using FOIDL as a teaching with respect to that feature of dividing these vessels. Isn't that sufficient? That's not sufficient because it's not telling a person... It's a water-based system. It's not telling a person still in the art how you do this in a system like Jane invented where you have separate caustic chemicals operating in a single housing in one environment. There's nothing in this reference that would lead a person still in the art to think that you could take this system where you're dissolving particles out of the air with water and you could implement that with highly reactive chemicals right next to each other. There's nothing to say that if you had these in adjacent chambers, you wouldn't have one chemical flowing into the other. You'd have all sorts of terrible things going on that we just don't know about in the reference to silanon. But the reference does... It not only talks about possibility of subdividing, but it also talks about using different washing liquids, each serving the purpose of dissolving another gaseous pollutant. Yes, sir. Which is not only the notion of having separate compartments, but having separate solutions as well. It is separate compartments and separate solutions. It's not separate chemicals. It's dissolving. It's not separate chemical reactions. It's dissolving. That's the language that the reference itself uses. In contrast, in Jane, we have different chemical reactions going on in different stages. The second flaw that we would ascribe to this combination made by the PTO is that the triplex device can't be modified to have the shared sump. If you do that, you destroy the core teaching of triplex and the related Davis patent of modularity. And this is not an insignificant thing, as the PTO would argue. In fact, modularity is fundamental in these earlier references because they were not capable of, within a single unit, adjusting to accommodate larger airflow. So if, for example, this system is treating gas that's being generated by a municipal sewer treatment plant, and the municipality adds a sewer system, and all of a sudden the airflow is larger, what you have to do if you're using Davis is to add more modules. It can't accommodate that within the system itself. So if you take Davis, for example, I'm sorry, if you take triplex and you start cutting it apart and sharing sumps, you lose the ability to rearrange the modules, which is what's fundamental. It's certainly described in the triplex reference, and it's fundamental in the Davis patent. That's what Davis is all about. If you have a system that is, on the one hand, a system that is modular, having advantages of easy replaceability of components and easy access, etc., and you have another system which is a combined unitary system, having perhaps advantages of being more compact in size, there are trade-offs either way. Does that necessarily mean that one is patentable over the other when you have choices? And either way you go, if it's modular, you give up some features and advantages of the unitary construction. If it's unitary, you give up some advantages and features of the modularity. And it would seem to me that all of that is entirely predictable. Well, it's more than just that. Because if you look carefully at Davis, Davis involves a system with one chemical where you're moving the treatment chemical through the system in a direction opposite the airflow. But it's the same chemical. So the chemistry is changing as you go. That only gets you so far in terms of what you can do. So Davis is very different, I'm sorry, Jane is very different in that his system now, with the separate chemicals, the separate chemical reactions that are going on, he's able to treat the, he has essentially a pretreatment stage in that first dedicated module that allows him to use, for example, a less expensive fluid. I think the patent describes it as being 10% the cost of the other material. And it gives him flexibility to change the fluids and change the capacity of the system to meet changing needs. So it's more than just making something unitary that was modular and losing some advantages. It's actually a fundamentally different system. The fundamental problem that we see with the office's argument on this point is that, well, it's actually very telling. Because what the office says is, well, if you have two chemicals and if you have three stages, there are only two ways to do this. You have to have shared and then common, or common and then shared. That's Heinzle. What the office is doing is looking at the invention and seeing that it uses two chemicals, which is not in the prior art, and three stages and saying, well, where do we need to get those pieces to put that together? It's not an appropriate analysis. There isn't a prior art system that has two chemicals and three stages and we're just rearranging that. This is new to the art. Was Feudal before the examiner that did the original work on 498? I'm sorry? Was Feudal before the examiner who examined the application that led to the 498? Feudal was not before the examiner in the original prosecution. I didn't see whether that was in the record or not, but I was just curious. That's right. Turning a bit more to the unitary claims, the bigger picture here we think really disposes of the unitary claims. You couldn't have a unitary system with Davis because you couldn't adjust it. You would lose the ability to modify it to treat the different changing conditions. You wouldn't do it because you didn't have the efficiencies that Jane gained. More specifically, the PTO argues that it would be obvious to make Davis unitary because Feudal is unitary. The fact is Feudal may be unitary, but there's no teaching anywhere in Feudal of an advantage to Feudal being unitary. It just happens to be a box. Why couldn't you have a series of sumps and interconnected lines in a unitary system that would in essence provide the same functioning capacity as the Davis system? I'm sorry? You were saying in essence you simply can't achieve in a unitary structure the benefits of what you're able to get in the modular structure. I'm saying why isn't it possible to construct a unitary structure that's got enough different sumps and pipes and whatnot running in it so that you're achieving inside the house, you will. All the rooms are doing the same thing that the independent modules were doing in the other earth. You could have an endlessly long system that's essentially... I'm just responding to your question and you couldn't do it. Maybe I didn't hear you, but I was hearing you to say, well, I'm sorry, the modular system has all these advantages that a unitary system can't achieve. Well, no, Jane's unitary system can achieve those advantages because of the unique chemical arrangement. So Jane can do what many modules of Davis does. Davis could not do, in three modules or two or whatever it is, what Jane does. So the PDO is aware of the fact that FOIDL doesn't teach anything about advantages of being unitary so they manufacture some and they say, well, of course unitary is better, it would be more compact. Well, that cuts against the prior art in that Davis has already described as compact. So the PDO's definition of unitary as compact is a little bit inconsistent with what's actually in the prior art. More to the point, though, there's no indication that making this thing unitary, no indication in the prior art as opposed to in Jane's application that making it unitary would make it smaller, more compact, or better. For all we know, if you shared walls, you'd have to make them thicker, you'd have to reinforce them. There are many things that you could have to do in a unitary system that we don't know about and we can't say. Similar with the piping that the PDO says you would lose, perhaps a person still would want access to that piping, we don't know. And these sorts of questions are why we went to the prior... During the re-exam, the examiner rejected your argument that N. Ray Larson was irrelevant. In Larson's art case, it holds in essence that it's obvious for one of the skill in the art that if he knows about modularity to try something unitary, if he knows about unitary, to break it up into modules. If there's nothing more though, Your Honor. Here there is much more. The unitariness is facilitated by... But in terms of whether or not it would have been obvious for one to modify a modular structure to make it unitary, why doesn't Larson simply answer that question yes? Because... Why was the examiner wrong on the re-exam when the examiner rejected... your argument that Larson was inapplicable? Well, I would say that Larson doesn't establish a per se rule that unitary is compatible. I would say that Larson says that in that case, unitary was compatible because it was simply a matter of combining two things that had been separate into one structure. But I thought the examiner was reading Larson for a broader proposition. And what I'm asking you is, you know, why was the examiner wrong? Why is it... Why would it be a bad rule to say in a field where something is modular, it would be obvious for one ordinary skill in the art to convert modularity into something that's unitary. You know, draw a wall around the pieces. Because it... Well, exactly for the reasons in this case. It ignores what's actually happening in the field. It ignores the fact that it's not obviously just make something modular where you would, for example, lose all of the teachings away, all of the advantages of the modularity. You may or you may not. You may not want them. It's true. Some particular unitary installation they talk about in the past, somebody might want to build one of these things in the factory all in one piece and ship it. It's true. It's balancing. And so what we have here is there is no teaching in the prior art of any advantage to unitary and there's plenty of teaching of advantages to modularity. If it pleases the court, I'd like to reserve a couple of minutes for microphone. Very well. Mr. Krauss? May it please the court? All the prior art references here are basically in the same field. It's the field of trying to remove unwanted constituents from a gas stream. The prior art includes the Feudal reference. It's got the unitary multi-stage provision where the gas goes up and down and it's contacted by a solution raining down on it. What's the reason to combine Feudal with Herpet? Well, the examiner came up with several reasons. He said you make the system more compact. He said you simplify the system. He says you remove complex interconnections and plumbing problems. So the reason to combine references is a factual issue under our law, right? Yes, it is. So, I understand how this compactness, if you would, might become a fact if the case were being tried in the US District Court because some party would assert that compactness is this and they'd be cross-examined, right? And someone would come in and say, no, no, no, there's some other reason to combine and you would work through testimony at trial and you would produce something that would be called a fact and then I could review it up here as a fact for clear error. How does a examiner manufacture a fact? The examiner reads Well, where did he get this compactness notion? Was it in a handbook? I mean, I know what the MPEP says. He's required to come up with a reason. Well, I think if you look at the two references, and again, we don't read compactness as necessarily meaning small. The first dictionary definition uses the term more firmly united and we think that's perhaps more apt here. I think, you know, you would share walls. It probably would be smaller but more firmly united is a fair definition of compactness consistent with what he said about simplicity and you see the simplicity if you look at the prior hour references. Triplex has three modules. You have to do interconnections on the sump at the bottom and at the top and you have to figure out a way to screw those three modules together, whereas a unitary system avoids those interconnections. You have fewer parts. But is an examiner free to simply use the examiner's common sense and the examiner's experience in the field to say here's the reason why I think these two references should be combined? Yes, the examiner absolutely is free to do that. As this court acknowledged in Dystar and in Kahn, Kahn was quoted in the Supreme Court decision in KSR, the examiner needs to articulate some reasoning with some rational underpinning for doing the combination, but in Dystar this court had a specifically noted you don't have to find it in the reference itself. You can find, for example, because it's stronger, cheaper, cleaner, faster, lighter, smaller, more durable or more efficient. More simple would certainly fall into that category and that's really what we're doing. So we are relying considerably on the experience, expertise, if you will, of the examiner as the examiner looks at the prior art to decide whether there would be a reason, if so, what for a combination because it's going to become then a fact and then if the board on review says oh yes, we like that rationale then it becomes a fact upon which we can only quibble with it if we find there was no substantial evidence to support it, right? I agree that is the standard your honor, it's a very favorable standard. It's giving the patent office, isn't that a real thumb on the scale in a 103 analysis that doesn't exist in a district court? Isn't it a lot easier for you all to figure out that references ought to be combined and then for us to have a whole lot less authority to undo that? Certainly as far as making our prima facie case it gives us a very sound basis for doing that but before us the applicant can always come back and show it. Does it make sense that there ought to be a different standard? I think it does your honor because once the patent issues from the patent office it has a presumption of validity which is then very difficult to overcome in the district court. It makes sense to impose a fairly rigorous standard of proof within the patent office for the applicant to show us, no somebody would not be motivated to make this combination, they can do that. I thought the argument might run the other way around and say it ought to be harder to get a patent coming out of the patent office because it's going to get the benefit of the presumption of correctness. I'm not sure I understood what you said there. As I'm saying I suppose what you're really saying is it's easier for you to stop the Right. We think the courts have established this relatively high threshold and we think it's not a bad idea because it forces the applicant before the patent issues to show us why this is deserving of an invention and this is a case in point here. We see a lot of attorney argument in the brief talking about all these supposed advantages and cost savings and all that but that wasn't presented in any kind of evidentiary form before the examiner or the board we don't see any kind of secondary considerations considered by the board so we don't really have that to review but if they bring that to the patent office in the first instance as the standard would require, I think that would make for a stronger patent. And I suppose with respect to the factual questions of teachings and what the references show and common sense, I suppose to the extent that an examiner takes a position that something is a matter of common sense or perhaps a matter of design choice of no patentable consequence, to the extent that the applicant feels that the patent office has pressed a little too hard on that scale and tipped a little too hard in one direction, the applicant can press back and challenge that conclusion with whatever evidentiary basis the applicant has at his discretion. Yes, we're very open to receiving affidavits to establish where the examiner misunderstood the prior art but the examiners at least as far as making a prima facie case are entitled to rely on their own reasoning for why one would combine references. Would it be enough for an examiner to simply conclude when the examiner goes out does a search, finds two references that show everything except one little item so the examiner dilemma, dilemma so the examiner says well I'm just going to say that that one thing that's missing was just a matter of design choice of no patentable consequence period. Prima facie case made? I think that's difficult I mean I think it may well depend on whether or not he can support his conclusion that that is, you know, if it's the question of a nail versus a screw or something like that that might be a design choice that might be supportable but other than that if there is an element missing, an element in the claim that's not taught by the prior art then that might be a grounds for suggesting the examiner shouldn't be calling that a prima facie case but that would depend on the exact record and we don't have that problem here. Talk if you would about what you view as the teaching of the portion of Feudal that is found at column 5 lines 26 through 31 we talked about that a bit with your opposing counsel but I'm curious to hear you articulate how much you think that passage teaches vis-a-vis this invention. I think counsel read it already but it teaches subdividing this existing shared sum into a plurality of compartments and it also suggests using multiple chemicals Now that's where I think you may have a different view from your opposing counsel. He characterized this as not really involving the same kind of chemical process and therefore not really revealing if I hope I'm not mischaracterizing this argument but not really disclosing the invention. I think that's fair when you look at the specifics of Feudal. Feudal is about dissolving the unwanted constituents in a gas stream as opposed to using a chemical reaction to get rid of them I do think the overall teachings of Feudal are certainly broader than that this is simply about how to design one of these units there's nothing in the claim specifically that explains how they've achieved this division of compartments to accommodate the different chemicals in fact there's no indication in their claim that the chemicals are somehow incompatible in fact the earlier claims having to do with unitary housing only involve one chemical anyway. This only shows up in the shared sum issue but there it just refers to a highly reactive chemical agent and a less reactive chemical agent without necessarily saying anything about them being incompatible much less showing how that incompatibility was somehow solved by the way they divided the sums and if you look at the Jane patent itself they seem to have divided it very similarly to the way it's divided in the Feudal reference and I could note also I noticed last night in the blue brief itself refers us to several places in the Davis patent itself the Davis patent, we don't rely on that because it was not prior art but they brought it in to support their teaching away argument the Davis patent itself in several places discusses the use of more than one chemical and I am now this is Davis patent starts at A1466 but I'm thinking of both A1471 column 2 lines 58 through 65 they discuss this idea of using more than one treatment fluids and that's acknowledged if you were using different washing liquids might you not be using different chemicals I believe so we're just kind of debating this point maybe in Feudal the washing fluids are only for the purpose of dissolving chemical constituents and you might say dissolution is not necessarily a chemical reaction I think that's the but I think it's a very fine line and again I'm just pointing out that even the Davis patent prior art certainly shows that in the context of the kind of system he's talking about the gas, the odor removal system you can use more than one kind of chemical  expressly says different washing liquids each serving the purpose of dissolving another presumably a different gaseous solvent or pollutant I think it only turns on this difference between dissolving as not being a chemical reaction but it is isn't the extent to which something can be dissolved in a particular solvent a function of its chemistry I believe it's very close I did a google on this very recently and you know dissolving sugar and to take the simplest case in the world you know you can dissolve grease in liquid that has soap in it, water that has soap in it but not in water that doesn't have soap in it and that's because of the chemistry of adding soap I'm really not trying to quibble with you because I support your argument there is a counter argument in the field of chemistry is all I'm saying but I don't think it matters you just don't want to overstate your case that's all okay if there's nothing further Mr. Moore just a couple points that I would like to make your honor with respect to compactness I would argue that there is no substantial evidence to support the finding of compactness it's clearly inconsistent with Davis they say that that Feudal is unitary and you would use that because it's more compact Davis already described itself as being compact so in the prior art we have compactness being applied the term compact being applied to what is already a modular unit it's not bolted or firmly united I don't believe although I would also point out that the PTO's definition of compactness as firmly united is almost essentially what we're claiming as unitary so now there the word games are changing around but in the end there isn't substantial evidence we think to show that a person of skill in the art in 1998 would have found Feudal to be something that would have made Davis more compact or that it would be more desirable for any reason at all with respect to with respect to Feudal they're relying on the overall teaching of Feudal understandably not wanting to talk about the chemistry I don't think but the overall teaching of Feudal doesn't show again the individual sump and then the separate sumps they would say Feudal it's just tinker toys you just move it around, whatever you want to do, whatever you put in your claim we've got because we can take Feudal and we can move around these chambers we don't believe that a person who was working in the art in 1998 would have seen that it's clear because these were not the systems that were being employed then what would that person have taken away from Feudal the person who was designing a system like Davis you've conceded that Feudal is on the table it's pertinent, it's prior art it's got to be considered you keep saying one of ordinary skill in the art in the field that you wanted to be in would read Feudal and would be unimpressed by Feudal would not have reached the conclusions that the examiner and the board reached as the teaching of Feudal so I'm saying to you what would your hypothetical person of ordinary skill have done with Feudal nothing in the context of a chemical system like Jameson they would have said Feudal is unitary so what they would have said Feudal is a system for knocking down combustion gases they would say Feudal is not a system where there are chemical reactions certainly not a system where there are very diverse chemicals your person is extra smart and says I wouldn't learn anything from something very simple I'm sorry I'm not the problem is that Feudal is just too simple no I wouldn't agree with that it's not that Feudal is too simple it's just not applicable it's a different environment it's not dealing with noxious enough gases is that what it is? it's not dealing with noxious enough chemicals yes but you're looking at Feudal and you're saying well a person of ordinary skill in the art would have only looked at the things that are different about Feudal wouldn't have looked at anything that's similar or anything that might be might be helpful well I would say that the person would look at it and set it aside initially but if the person looked at it in more depth I would say that the person would think well there's nothing in this reference that shows me how to do it with these cost of chemicals thank you thanks to both council